**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**ROBERT D. PARKER,**

        Plaintiff,

**v.**
                                             **Civil Action No. 5:19-cv-303**
                                             Judge Bailey

**RN HILEMAN,**

        Defendant.

## REPORT AND RECOMMENDATION

### I. Background

The *pro se* plaintiff, an inmate at USP Pollack, initiated this action on November 4, 2019, by filing a Bivens complaint regarding his medical care FCI Hazelton. [Doc.1]. The plaintiff named RN Pearsal and RN Hileman as defendants. By Order entered December 2, 2020, the plaintiff was granted permission to proceed IFP but was directed to pay an initial partial filing fee ("IPFF"). [Doc. 10]. The plaintiff paid the requisite fee on February 3, 2020. [Doc. 12].

On September 6, 2018, the undersigned conducted a preliminary review of this matter, determined that summary dismissal was not appropriate, and entered an Order to Answer, directing that sixty-day summonses be issued for service on both Pearsal and Hileman by the U.S. Marshal Service. [Doc. 13]. The summons for Pearsal was returned unexecuted because she was no longer employed by the Bureau of Prisons. [Doc. 19]. On April 14, 2020, an Order was entered giving the plaintiff 21 days to provide

1

an updated address for Pearsal. [Doc. 22].  On May 21, 2020, the plaintiff was given

an additional 21 days to provide said address because it appeared. that the original

order never arrived at USP Lompoc. [Doc. 25].  However, the *pro se* law clerk assigned

to this matter received an email confirmation on June 3, 2020, that the certified mail log

at USP Pollock established that the Order was received on April 21, 2020. On June 16,

2020, more than 60 days after the original Order was entered, Pearsal was dismissed

without prejudice. [Doc. 26].

On July 27, 2020, the remaining defendant, RN Hileman, filed a Motion to Dismiss

or, alternatively for summary judgment with a memorandum in support, attaching two

sworn declaration with attached exhibits. [Docs. 29, 30]. Because the plaintiff is

proceeding *pro se*, on July 28, 2020, a Roseboro Notice was issued, advising the plaintiff

of his right to file a response to the defendant's dispositive motion.  [Doc. 31].  On August

11, 2020, the plaintiff filed his response with attached medical records. [Doc. 33].

Accordingly, this case is before the undersigned for R&R pursuant to Local Rule of

Prisoner Litigation Procedure ("LR PL P") 2.

## II. The Pleadings

### A. The Complaint

In his complaint, the plaintiff alleges that on August 7, 2017, while incarcerated at

FCI Hazelton, he was coerced into taking a second or follow up pneumonia vaccine. The

plaintiff further alleges that he told medical that he did not want to take the second vaccine

because of the pain caused by the first. The plaintiff maintains that as the result of the

second vaccine, he developed a fever and had swelling and pain at the site of the

2

injection. He contends that RN Hileman injected him with 50 mg of Benadryl and 80 mg of Depakote around 7:20 p.m. He claims that shortly thereafter, his heart rate decreased substantially, and he collapsed around 7:30 p.m. in the N3 housing unit.  He continues by stating that while he was in and out of consciousness, he was rushed by stretcher to the prison treatment room where RN Hileman administered a shot of Narcan on two separate occasions.  When EMS arrived, the plaintiff indicates that RN Hileman told them that he was found in his cell at 9:30 p.m., which was clearly a fabrication and "elaborated" story which caused the EMS response team to treat him as a drug overdose which caused him more pain and suffering until further evaluation by EMS and doctors at two separate hospitals. In his complaint, the plaintiff refers to "undue deference" and "medical malpractice."  For relief, he seeks $3,3000,999.

**B. Defendants Motion to Dismiss, or Alternatively, Motion for Summary Judgment**

In response to the  complaint, the defendant contends that the plaintiff filed this lawsuit without first exhausting his administrative grievances, and therefore his cannot litigate his claims in this proceeding. In addition, the defendant argues that even if the plaintiff had exhausted his administrative grievances, his lawsuit is untimely and barred by the applicable statute of limitations.   Finally, the defendant alleges that the plaintiff cannot establish that she violated his constitutional prohibition against cruel and unusual punishment.

**C. Plaintiff's Response in Opposition**

The plaintiff sets out in more detail the sequence of events on the day of his second pneumonia vaccine.  He also attached brief medical records from Hazelton and Mon

3

Health Medical Center. In addition, he has changed his request for relief to $679,000 to compensate him for his pain and suffering, medical malpractice, medical negligence, as well as the medical indifference.

### III. Standard of Review

### A. Motion to Dismiss - Fed.R.Civ.P. 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a

4

formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> (citations omitted), to one that is "plausible on its face," [<u>id.</u> at 570], rather than merely "conceivable." <u>Id.</u> Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id.</u>

B. <u>Motion for Summary Judgment</u>

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The Court

must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1995 (PLRA), as amended, prisoners must exhaust the grievance procedure in the institution where they are incarcerated prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. §1997e(a). Further, the Court has held that "proper exhaustion" is required, meaning that the inmate must

6

follow the prison's administrative rules as required, including when and how to file the grievance. See Woodford v. Ngo, 548 U.S. 81 (2006).

In Woodford, the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford, 548 at 93 – 94.  Therefore, "the PLRA exhaustion requirement requires *proper* exhaustion." Id. at 93 (emphasis added).  Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  Id. at 90 – 91.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth v. Churner, 532 U.S. 731, 741, n.6 (2001), several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the

Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable.  See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004).  But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats  or intimidation to render administrative remedies unavailable, they must typically be substantial  and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Under § 1997e(a), the exhaustion requirement depends on the "availab[ility]" of administrative remedies: An inmate must exhaust available remedies but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).  For example, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use, such as when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  Ross, 136 S. Ct. at 1859. Or, a remedy might be rendered unavailable because prison administrators thwart inmates from taking advantage of it "through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1860.

8

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director ("RD") signed the response.[1] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

Within the BOP's record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request

---

[1] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

through the various levels of administrative review. The alpha portion of the suffix indicates the specific level of the administrative review process.  Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. The numeric portion of the suffix indicates the number of times that particular administrative grievance has been filed at a specific level. For example, "F1," indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and re-files at the same level, the suffix would be "F2."

An inmate's complaint at the institutional level or on appeal may be rejected for noncompliance with the requirements of the administrative remedy process. If the defect can be cured, the inmate will be given an opportunity to do so and to resubmit his complaint. If the inmate is not given an opportunity to fix his complaint he may appeal to the next level. Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels.

With respect to the plaintiff's claims regarding the second pneumonia vaccine, the plaintiff filed a BP-9 requesting a more proper investigation of his medical incident that occurred on August 7, 2017. [Doc. 1-4 at 7]. It was received on September 13, 2017 and assigned Remedy ID No. 915710-F1. The BP-9 was rejected on September 19, 2017 because the grievance was untimely having been received more than 20 days after the alleged incident and because it had more than one attachment page. [Doc. 30-1 at 15].

On September 13, 2017, the BOP Mid-Atlantic Regional Office received Administrative Remedy No. 915710-R1 from the plaintiff.  This grievance  was rejected at

the regional level on October 17, 2017 because the appeal was untimely, because the plaintiff submitted more than one attachment page, and because the plaintiff did not provide a copy of the original administrative grievance or the response he received from the prison warden.  The regional office instructed the plaintiff that he could resubmit his appeal in proper form within 10 days of the date of the rejection and provide staff verification stating that the untimely filing was not his fault. [Doc. 1-4 at 15].

On November 13, 2017, the BOP Central Office received Administrative Remedy No. 915710-A1 from the plaintiff. This  grievance was rejected on December 1, 2017. The Central Office informed the plaintiff that if prison staff could provide a memorandum stating the reason that the original grievance was late at the BP-9 stage, he could resubmit his grievance at that level.  [Doc. 30-1 at 16]. The plaintiff did not resubmit his BP-9.

This recitation of the plaintiff's grievance history establishes that he did not exhaust the medical allegations raised in his complaint. Despite being advised by both the regional and central office that he could resubmit his grievance, he failed to do. Furthermore, in response to the defendant's pending Motion to Dismiss or for Summary Judgment, the plaintiff fails to address the affirmative defense that he did not exhaust his administrative grievances as required by the PLRA, thus depriving this Court of jurisdiction over his complaint. Accordingly, this matter is subject to dismissal.  Moreover, even if the plaintiff had exhausted his administrative remedies, this matter is still due to be dismissed as discussed below.

B. **Statute of Limitations**

For purposes of determining the appropriate statute of limitations, claims filed pursuant to 42 U.S.C. § 1983 are analogous to "general personal injury actions." Wilson v. Garcia, 472 U.S. 261, 279 (1985). Thus, their timeliness is determined based upon the relevant state limitations period for personal injury actions.  Because Bivens is the federal equivalent to an action under § 1983, federal courts have consistently extended the state general personal injury statute of limitations to Bivens cases, as well as § 1983 claims. See, e.g. Chin v. Bowen, 833 F.2d 21, 23-24 (2nd Cir. 1987). In fact, the Fourth Circuit Court of Appeals has determined that West Virginia's two year personal injury statute of limitations contained at W.Va. Code § 55-2-12(b) is appropriately applied in Bivens actions. See Reinhold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

W.Va. Code § 55-2-12(b) provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

The plaintiff's complaint involves his medical care at FCI Hazelton on August 7, 2017. Therefore, he had two years, or until August 17, 2019 to file this lawsuit,  However, this Court did not receive the complaint until November 4, 2019, and the envelope in which the plaintiff mailed his complaint was postmarked on October 31, 2019.

The undersigned recognizes that a court can equitably toll the applicable statute of limitations while an inmate exhausts his administrative remedies. However, the statute of

limitations is generally only tolled if the plaintiff is prevented from asserting his rights, not where he does not diligently pursue his remedies.

As previously noted, the BOP grievance procedure requires an inmate to file his BP-9 within 20 days.  Therefore,  absent a valid reason for an extension, the deadline to complete his informal grievance procedure (BP-8) and file  his BP-9 was August 27, 2017. The plaintiff signed his BP-9 on August 31, 2020 but did not file it until September 13, 2017. [Doc. 1-4 at 7].   FCI Hazelton rejected the grievance as untimely. The plaintiff then appealed the rejected grievance to the appropriate regional office and the BOP central office without addressing the timeliness of the grievance or resubmitting the grievance with documentation to explain the delay as he was directed to do. [Doc. 1-4 at 15, 30-1 at 16].

Therefore, although the plaintiff filed his complaint on November 4, 2019, just less than two years after his BOP-11 was rejected, it is clear that he did not diligently pursue his administrative grievance, and he has offered no explanation for his inaction in doing so. Accordingly, the undersigned finds that this complaint was filed outside the applicable statute of limitations and is due to be dismissed for that reason.

## C. Deliberate Indifference

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). These principles apply to the conditions of confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; See also Farmer v. Brennan, 511 U.S. 825, 832 (1994)

(explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment).

To establish a violation of the Eighth Amendment with respect to medical care, an inmate must prove two elements. See Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). First, the inmate must objectively prove that the deprivation of medical care was "sufficiently serious."   Id. Second, the inmate must subjectively prove that prison staff acted with a "sufficiently culpable state of mind." Id.

The objective element is satisfied by proof of the inmate having a serious medical need. Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).  A serious medical need can also exist if a delay in treatment would cause a life-long handicap or permanent loss.  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[2]

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health

The subjective element is satisfied by showing deliberate indifference by prison staff.

Johnson, 145 F.3d at 167.  The Fourth Circuit has summarized what constitutes deliberate

indifference:

> To establish that a health care provider's actions constitute deliberate
> indifference to a serious medical need, the treatment must be so grossly
> incompetent, inadequate or excessive as to shock the conscience or to be
> intolerable to fundamental fairness. Deliberate indifference may be
> demonstrated by either actual intent or reckless disregard. A defendant acts
> recklessly by disregarding a substantial risk of danger that is either known to the
> defendant or which would be apparent to a reasonable person in the defendant's
> position. Nevertheless, mere negligence or malpractice does not violate the
> eighth amendment.

Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990) (citations omitted). Furthermore, so long

as the medical treatment given is adequate, the fact that an inmate would have preferred a

different type of care does not constitute deliberate indifference. Chance v. Armstrong, 143

F.3d 698, 703 (2nd Cir. 1998).  Similarly, the fact that other medical professionals would have

pursued a different type of treatment does not, by itself, establish deliberate indifference.

Hanson v. Smith, 9 F.3d 1557 (10th Cir. 1993).  Accordingly, deliberate indifference is

"generally not found when some significant level of medical care has been offered to the

inmate."  Atwater v. Gabriel, 2012 WL 750754 (M.D.Pa. 2012).

There is no dispute that the plaintiff received the second in a two series pneumonia

vaccine on August 7, 2017. There is also no dispute that he was seen by the defendant, Gary

Hileman in Health Services at approximately 8:00 pm that same date for complaints of pain

---

of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance
v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip a serious
condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper
circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281
Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's
broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir.
1978).

and swelling at the injection site.  The on call midlevel practitioner, Ms. Underwood, directed the defendant to give him an injection of Depomedrol[3] and Benadryl[4] for the swelling and pain. [Doc. 30-2 at 39-40]. The plaintiff was advised to follow-up at sick call as needed and return immediately if his condition worsened.

At 8:45 pm on August 7, 2017, a medical emergency was called by an N/3 officer because an inmate was down in the doorway with seizure like activity. The defendant responded and found the plaintiff on his back and unresponsive to voice. The plaintiff responded to a [sternum] rub but would go back into an unresponsive state. The plaintiff was then placed on a gurney, and the operations lieutenant was alerted to call 911.  Upon arrival to health services, the plaintiff's pupils were 3mm and fixed, he was febrile at 100.9. An IV was placed in his left arm with normal saline solution. He again would only respond to stimulation and then become unresponsive.  In addition, seizure like activity would come and go.  [Doc. 30-2 at 36]. When EMS arrived, they requested that NARCAN be given, and following administration, there was no change in the plaintiff's mental status.  The plaintiff was then handed off to EMS and transported to Monongalia General Hospital ("Mon. Gen."). [Id. at 37].

At Mon. Gen, he had x-rays of his right knee because of pain. No significant abnormality was noted. [Doc. 30-2 at p. 95].  In addition, he was given a chest x-ray because of his altered mental status.  His heart size  was within normal limits, and his lung fields appeared clear. Although his level of inspiration was less than optimal, the x-ray of the region was unremarkable with no acute intrathoracic abnormality. [Id. at 95-96].

---

[3] The medical notes indicate that the plaintiff was given 80 mg of Methylpredisiolone, commonly referred to as depomedrol, which is an anti-inflammatory. See rxlist.com.

[4] The medical notes indicate that the plaintiff was given 50 mg of Diphenhydramine, commonly known as Benadryl. It is used to treat allergic reactions. See medlineplus.gov.

16

The plaintiff was subsequently transferred to Ruby Memorial Hospital, where examination revealed that he was in no acute distress, but his right arm was swollen from the mid upper arm to the mid forearm. The medical assessment was right arm swelling likely caused by a vaccine reaction. Treatment consisted of elevation of the right hand and icing 20 minutes on, 20 minutes off, continuously. He was given Toradol for pain. [Doc. 30-2 at 32]. The plaintiff was discharged on August 9, 2017 with complete selfcare ability and instructions to follow up with his primary care provider in three days. [Doc. 30-2 at 24].

Although the plaintiff alleges that he experienced a "cardiovascular collapse" due to the high does of Benadryl and Depo that was administered, there is simply no evidence in the medical record that supports that allegation. Furthermore, although he alleges that the defendant had indicated that he would reassess him at 8:30 pm, the medical records establish that the plaintiff was advised to follow up at sick call as needed and return immediately if his condition worsened.  Furthermore, the plaintiff repeatedly refers to medical malpractice and medical negligence. However, even if true, the same does not equate to deliberate indifference. As noted by the Fourth Circuit, "courts will not intervene upon allegations of mere negligence, mistake, or difference of opinion." Wright v. Collins, 766 F.2d 84, 849 (4th Cir. 1985).

In short, the plaintiff simply summarily concludes that the defendant violated his Eighth Amendment rights. He offers nothing beyond his own supported speculation to support that conclusion. Conversely, the medical records establish that the defendant gave the plaintiff medication for reported right arm and swelling and responded immediately to the emergency call from the plaintiff's housing unit.  The fact that the plaintiff may disagree with the treatment he received from the defendant does not establish deliberate indifference.

17

## V. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, or Alternatively, Motion for Summary Judgment **[Doc. No. 29]** be **GRANTED** and Plaintiff's <u>Bivens</u> Complaint **[Doc. No. 1]** be **DENIED** and **DISMISSED with prejudice**.

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge John Preston Bailey.  Within 14 days of service of this Report and Recommendation any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave  to exceed the page  limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

18

Upon entry of this Report and Recommendation, the clerk of court is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: October 22, 2020

/s. James P. Mazzone

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE